RECEIVED

AUG - 2 2010

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| WILLIAM J. SEPULVADO | CIVIL ACTION NO. 08-726 |
| VERSUS | JUDGE DOHERTY |
| ALPHA DRILLING, LLC, ET AL | MAGISTRATE JUDGE HANNA |

### MEMORANDUM RULING

Currently pending before this Court is a "Motion for Partial Summary Judgment" [Doc. 22] filed by defendants, Alpha Drilling, L.L.C., p/k/a Drilling Productivity Realized, L.L.C., Bravo Drilling, L.L.C., p/k/a P.C. Axxis, L.L.C. and Axxis Drilling, Inc. (collectively referred to as "Axxis").[1] In their motion, defendants argue plaintiff was not a Jones Act seaman at the time of the second accident sued upon.[2] Specifically, defendants move for a partial judgment, "holding that Plaintiff was not a Jones Act seaman at the time of his accident on October 20, 2007, thus Plaintiff's recovery for such accident, if any, is limited to compensation under the Louisiana Workmen's Compensation Act, La. R.S. 23:1021 *et seq.*" [Doc. 22-1, p.8] The motion is opposed by plaintiff

---

[1] Following a review of all documents filed in this matter, the Court is unable to identify the role of either Alpha Drilling, LLC or Bravo Drilling, LLC in this matter. Although both entities are identified as defendants in the Complaint, plaintiff asserts no facts alleging a claim against those entities. (Rather, all factual allegations in the complaint refer to Axxis.) Regardless, counsel has appeared on behalf of all defendants collectively, and answered the complaint as to all. The Court further notes that although the pending motion has been filed on behalf of all defendants, only the actions of Axxis (plaintiff's employer) are discussed.

[2] In plaintiff's complaint, he seeks damages for two injuries allegedly incurred while working for Axxis. The first occurred on February 9, 2006, when plaintiff was working as a crane operator aboard a vessel; the second occurred in October of 2007, while plaintiff was working as a galley hand on a land rig. Defendants do not contest, within the pending motion, that plaintiff was a Jones Act seaman at the time of the first accident.

1

[Doc. 24]. For the following reasons, the motion is DENIED.

## I. Factual and Procedural Background

Plaintiff began working for Axis in 2003 as a floorhand.[3] [Doc. 22-1, p.2] After sustaining several injuries and while recuperating from surgery, "Axxis sent Plaintiff to crane operating school because working as a crane operator would be less strenuous on Plaintiff's body than roughnecking." [Id.] "Plaintiff returned to work with Axxis as a crane operator aboard the D/B JUSTICE on December 1, 2005." [Id.] Plaintiff alleges on February 9, 2006, while working as a crane operator for Axxis aboard the D/B JUSTICE, a self-propelled drilling barge, "his right lower extremity was crushed between [a] crane and the crane's door," resulting in injuries "to his right lower extremity and lower back." [Docs. 1, ¶ 11; 22-2, ¶ I; 24-1, ¶ 1]

On July 11, 2006, Cindy Lynch, Axxis' Personnel Manager, called plaintiff and instructed him to report to Axxis' office on July 13, 2006 at 8:30 a.m.[4] [Doc. 24-2] At that time, Dr. Langford,

---

[3]The parties do not state whether plaintiff was assigned to a land rig, a vessel, or a platform while working as a floorhand. However, a review of plaintiff's deposition reveals at some point while working as a floorhand, plaintiff was assigned for over a year to the "Freedom, a barge rig." [Doc. 22-3, p.9]

[4]The memorandum of that call, drafted by Axxis personnel manager, reads as follows:

7/11/06

Spoke to William Sepulvado. Told me he was lying up in bed with his feet raised. He said he was using a cane to walk around. He has been sick with bladder problems and diverticulosis which he has had before. William said he has not been to the doctor or to therapy since he came into the office (5/10/06) because Steve was supposed to set that up and call him back. I told him I would check into and get back to him.

I called Langford's office but already closed for the day. Called William back and told him I would get back to him and for him to be in the office Thursday morning at 8:30 a.m. to see Bob. He then said well you know my legs are hurting real bad.

[Doc. 24-20] The parties do not state whether or not plaintiff reported to work on July 13, 2006, as instructed.

2

plaintiff's treating physician, had placed plaintiff on a "no work status." [Docs. 24, p.2; 24-2, p.13] On July 17, 2006, Ms. Lynch wrote to Dr. Langford asking whether plaintiff had reached maximum medical improvement ("MMI") with respect to his right knee. Dr. Langford responded by stating plaintiff had not reached MMI, and provided the following explanation:

> No clear pathology demonstrated as to cause of pain, limp, loss of flexion right knee. Without demonstrated cause for these complaints no physician can honestly certify MMI in this case. I feel for a dozen reasons we need the minimum of a detailed orthopedic evaluation. Call if you need me to do more.

[Doc. 24-1, p.3]. On July 21, 2006, Ms. Lynch called Dr. Langford, requesting his opinion as to whether or not plaintiff was capable of light work, as Axxis wanted a light duty release for plaintiff. [Doc. 24, p.3] On July 24, 2006, Dr. Langford changed plaintiff's work status to "light duty status (desk work)," adding "this release provided in compliance with employer request after latest diagnostic evaluation." [Doc. 24, p.3]. On July 26, 2006, Ms. Lynch prepared a document addressed to plaintiff, stating in pertinent part as follows:"This is to notify you that you are being reassigned from our barge rig operations to our land/office operations. This is effective immediately and is a permanent reassignment." [Doc. 22-5] Plaintiff signed the notice of reassignment on August 7, 2006. [Doc.22-1, p.4; Doc.22-5].

Plaintiff remained on "light duty" for approximately nine months. On March 28, 2007, plaintiff underwent a Functional Capacity Evaluation ("FCE") at Axxis' request. [Doc. 24, p.4] The report from the evaluation (dated April 13, 2007) stated plaintiff was capable of performing "medium level" work, his previous job as a crane operator constitutes medium level work, and therefore plaintiff would be able to return to his former job as a crane operator. [Doc. 24-2, pp. 19-20] The report is silent as to whether or not plaintiff could perform any job other than "crane operator." [Id.] Plaintiff was released to return to work at Axxis on April 19, 2007. [Doc. 22-1,

pp.2-3].

On some unspecified date after April 19, 2007, plaintiff was assigned to work as a galley hand on the land rig GEORGIA. [Doc.22-1, p.3]. Plaintiff testified at his deposition that Axxis continued to pay him the wages of a crane operator while he worked as a galley hand. [Doc. 24-2, p.7] Plaintiff additionally testified Axxis only assigned him to land-based work temporarily, until a position for a crane operator became available. [Docs. 24, pp.5-6; 24-2, pp.3-7]. Defendants dispute the truth of the foregoing statement and have submitted the affidavit of Robert Dunn, President of Axxis, in which he asserts: "At no time did I inform Plaintiff that his position on the GEORGIA was temporary until a crane operator's position became available on a drilling barge."[5]

---

[5]It is unclear from plaintiff's deposition testimony whether Mr. Dunn was the only individual with Axxis who plaintiff alleges advised him his reassignment was only temporary. Plaintiff testified on this issue as follows:

[Examination by defense counsel]

| | |
|---|---|
| Q | . . . Were you released to return to work on 4/19/07? |
| A | Yes. |
| Q | Was that to go back to full duty? |
| A | No. |
| Q | What did they release you to do? |
| A | Temporary position as galley until they had an opening back on the barge. |

. . . .

| | |
|---|---|
| Q | . . . Did they [the doctors] ever give you an additional release that you were capable of doing something beyond light duty? |
| A | I don't recollect. |
| Q | If you don't know, you don't know. Then did you go back to work? |
| A | Yes. After the yard they sent me to a land rig to work. |
| Q | In what capacity? |
| A | Light duty work. Galley hand. Temporary galley. |

. . . .

| | |
|---|---|
| Q | You went to port first? |
| A | Over to the yard until they got the rigs rigged up and out. And they put me temporary galley until a crane operator opened up to come back on the barge. |

. . . .

| | |
|---|---|
| Q | You go back after working a little bit in the port and you do galley on a land rig? |
| A | Yes. |
| Q | What land rig? |

4

[Doc. 22-5, p.8, ¶ 6]

On either October 19 or 20, 2007, while working as a galley hand on the GEORGIA, plaintiff alleges he injured his cervical spine while unloading a 148 quart cooler packed with ice and meat

---

| | | |
|---|---|---|
| A | | I was on the Georgia. |
| | | . . . . |
| Q | | Was this a reassignment when you went to the Georgia? Did they tell you that you are now reassigned to go work on the Georgia as a galley hand? |
| A | | Basically. |
| | | . . . . |
| Q | | Never any more water rigs? |
| A | | No. |
| Q | | You were assigned to the Georgia? |
| A | | Yes, sir. |
| | | . . . . |
| Q | | We were getting ready to go to – you are working on the Georgia as a galley hand. |
| A | | Temporary galley hand. |

[Examination by plaintiff's counsel]

| | | |
|---|---|---|
| Q | | When you went back to work, how was it that you came about being assigned to work on the land rig called the Georgia; was that the name of it? |
| A | | Yes. |
| Q | | How did you come to be assigned to it? |
| A | | Mr. Bob Dunn asked me about gong to work, you know. |
| Q | | And when you and he had this discussion, did he tell you whether or not this was a temporary assignment or a permanent assignment? |
| A | | Temporary. |
| Q | | What did you understand was meant by a temporary assignment to this rig called the Georgia? |
| A | | Temporary galley as to when they had an opening back on the barge rig, to go back to work as crane operator. |
| | | . . . . |
| Q | | . . . You said you had this discussion with Bob Dunn about the assignment to the Georgia? |
| A | | Yes. |
| Q | | Where did you have that at? |
| A | | At the office or yard. I don't remember. |
| Q | | Was that discussion after you were assigned to go to the Georgia or before? |
| A | | Before. Temporary galley, light duty. |

[Doc. 22-3 (Plaintiff's deposition) at pp. 66-72, 120-121, 127-128]

from the back of a flatbed truck.[6] [Docs. 24-1, p.5; 22-1, p.3; 22-3, p.19] Plaintiff subsequently filed suit in this Court, seeking damages for both the February 2006 and the October 2007 accidents. Thereafter, defendant filed the motion for partial summary judgment now pending before this Court.

**II.     Summary Judgment Standard**

A party claiming relief, or a party against whom relief is sought, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. Fed. R. Civ. Proc. 56(a) and (b). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c)(1)(2).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. Proc. 56(e). As summarized by the Fifth Circuit in Lindsey v. Sears Roebuck and Co., 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also*, Moody v. Jefferson Parish School Board, 2 F.3d 604, 606 (5th Cir.1993); Duplantis v. Shell Offshore, Inc., 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

---

[6]The complaint filed in this matter alleges the injury occurred on October 19, 2007; the incident report states the injury occurred on October 20, 2007. [Docs. 1, p.5; 24-2, p.23]

The Supreme Court has instructed:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Where no such showing is made, "[t]he moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

Lujan v. National Wildlife Federation, 497 U.S. 871, 884 (1990)(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The Court later states:

> In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment shall be entered against the nonmoving party unless affidavits or other evidence set forth specific facts showing that there is a genuine issue for trial. The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Id. at 888-89 (1990)(internal quotations and citations omitted). The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)(citations and internal

quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached. Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

### III. Applicable Law

To qualify as a seaman under the Jones Act, plaintiff bears the burden at trial of proving seaman status. Becker v. Tidewater, Inc., 335 F.3d 376, 390, n.8 (5th Cir. 2003)(citing Barrett v. Chevron, U.S.A., Inc., 752 F.2d 129, 132 (5th Cir. 1985)). To prove seaman status, plaintiff must show: (1) his duties "contribut[ed] to the function of the vessel or to the accomplishment of its mission," and (2) he has "a connection to a vessel in navigation (or to an identifiable group of such vessels[7]) that is substantial in terms of both its duration and its nature." Chandris, Inc. v. Latsis, 515 U.S. 347, 368 (1995). "[S]atisfying the first prong of the test is relatively easy: the claimant need only show that he 'do[es] the ship's work.' This threshold requirement is 'very broad,' encompassing 'all who work at sea in the service of a ship.'" Becker at 387-88 (quoting Chandris at 368). The purpose of the second prong (i.e. the "substantial connection" requirement) is to "separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based maritime workers who have only a transitory or sporadic connection to a vessel in

---

[7]An "identifiable group" of vessels is a finite group of vessels "under common ownership or control." Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 556-560 (1997).

navigation, and therefore whose employment does not regularly expose them to the perils of the sea." Chandris at 368. "Importantly, this second prong constitutes a 'status-based' standard - *i.e.*, 'it is not the employee's particular job that is determinative [of seaman status], but the employees connection to a vessel.'" Becker at 388 (quoting Chandris at 370)(alterations in original).

When determining whether an employee is a seaman (as opposed to, for example, a land-based employee temporarily working aboard a vessel), the court looks to the "total circumstances of an individual's employment" and must consider both "[t]he duration of a worker's connection to a vessel and the nature of the worker's activities." Id. at 370; *see also* Zertuche v. Great Lakes Dredge & Dock Co., LLC, 306 Fed.Appx. 93, 95 (5th Cir. 2009). Thus, although the second prong "is not *merely* a temporal concept, . . . it necessarily includes a temporal element." Id. at 371 (emphasis in original). "[A]n appropriate rule of thumb for the ordinary case [is]: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act." Id. at 371 (suggesting summary judgment is appropriate if the plaintiff clearly cannot reach this threshold level).

While the general guideline looks to the entire length of a worker's employment with a particular employer, the Supreme Court carved out an exception to the 30 percent requirement in those situations where "a maritime worker's basic assignment changes." Id. at 372; *see also* Zertuche at 95-96. In those situations where "a maritime employee receives a new work assignment in which his essential duties are changed, he is entitled to have the assessment of the substantiality of his vessel-related work made on the basis of his activities in his new position."[8] Id. Although the

---

[8]Expounding upon the exception to the general rule, the Supreme Court provided the following observations:

For example, we can imagine situations in which someone who had worked for years in

9

Supreme Court in <u>Chandris</u> did not explicitly state the changes to the maritime worker's basic assignment must be "permanent," the Fifth Circuit in <u>Becker</u> appears to have read a "permanent change" requirement into the <u>Chandris</u>' exception to the general rule:

> Plaintiff attempts to fit himself into the first <u>Chandris</u> exception to the Fifth Circuit's general 30 percent temporal requirement. . . . He argues that although in the past he did not work on sea vessels at all (let alone for 30 percent of his time), he was assigned to the REPUBLIC TIDE and, at that point, underwent a change in status and became a seaman. If we are to be persuaded by this theory, we would need to conclude that (I) when plaintiff was assigned to the REPUBLIC TIDE, he was removed from his former position of land-based intern and assigned to a new, sea-based position, (ii) this reassignment **permanently** changed his status, and (iii) by serving in this new position, plaintiff would spend at least 30% of his time aboard a vessel.

<u>Becker</u> at 390 (emphasis added). Thus, in this circuit, when changes to a maritime worker's duties are temporary, the fact-finder generally must look to the entire length of a worker's employment with a particular employer; however, where those changes to the worker's duties are permanent, the fact-finder should confine itself to evaluating *only* the activities of the worker's new assignment. Prior to <u>Chandris</u>, the Fifth Circuit held that the resolution of the effect of a prolonged shore assignment on the issue of seaman's status is itself a question of fact:

> [H]ow long a seaman's status continues after a shoreside assignment is itself a fact question dependent on such factors as the duration of the assignment, its relationship to the employer's business, whether the employee was free to accept or reject it without endangering his employment status and any other factors relevant to the ultimate inquiry: at the moment of injury was the employee a seaman by conventional Jones Act criteria who happened not to be on navigable waters, or was

---

> an employer's shoreside headquarters is then reassigned to a ship in a classic seaman's job that involves a regular and continuous, rather than intermittent, commitment of the worker's labor to the function of a vessel. Such a person should not be denied seaman status if injured shortly after the reassignment, just as someone actually transferred to a desk job in the company's office and injured in the hallway should not be entitled to claim seaman status on the basis of prior service at sea.

<u>Chandris</u> at 372.

he at that time no longer a seaman whatever his past relationship or his future prospects?

Guidry v. South Louisiana Contractors, Inc., 614 F.2d 447, 453 (5th Cir. 1980). This Court finds no indication in Chandris (or any other subsequent authority) which would call into question the foregoing analysis from Guidry. Finally, as noted in Guidry, the jurisprudence does not "suggest an indefinite reach for Jones Act status nor, if there is a limit, where it should be drawn." Id.

Finally, "[b]ecause the determination of whether an injured worker is a seaman under the Jones Act is a mixed question of law and fact, it is usually inappropriate to take the question from the jury." In re Endeavor Marine Inc., 234 F.3d 287, 290 (5th Cir. 2000)(citing Harbor Tug, 520 U.S. at 554). "Nevertheless, summary judgment is mandated where the facts and the law will reasonably support only one conclusion." Id. (internal quotation marks and alterations omitted). *See also* Wallace v. Oceaneering Intern., 727 F.2d 427, 432 (5th Cir. 1984)("The issue is to be left to the jury even when the claim to seaman status appears to be relatively marginal"); Bouvier v. Krenz, 702 F.2d 89, 90 (5th Cir. 1983)("While summary judgment on seaman status in Jones Act cases is rarely proper, and even marginal cases should go to the jury, it is in some circumstances possible to rule as a matter of law that a worker is not a seaman."); Barrios v. Louisiana Const. Materials Co., 465 F.2d 1157, 1162 (5th Cir. 1972) ("[T]he issue is to be left to the jury even when the claim to seaman status appears to be a relatively marginal one").

IV. **Analysis**

Within their motion, defendants frame the issue and argument as follows:

> The question before this Honorable Court is whether Plaintiff was a Jones Act seaman at the time of his alleged accident aboard the GEORGIA or whether his recovery for such accident is limited to compensation under the Louisiana Workmen's Compensation Act, La. R.S. 23:1021, *et seq.*

11

> Throughout this litigation, Plaintiff's position has been that he was a Jones Act seaman at the time of both injuries because he was assigned permanently to the D/B JUSTICE as a crane operator. While recovering from his leg injury, Plaintiff was temporarily reassigned to the land rig GEORGIA. However, Plaintiff argues that he did not lose his status as a Jones Act seaman because of his temporary reassignment to a land rig.
>
> As set forth more fully below, Plaintiff's argument fails. After his leg injury, Plaintff was permanently reassigned to Axxis' land/office operations on July 26, 2006. Plaintiff signed an acknowledgment on August 7, 2006, (over two months prior to his alleged accident on October 20, 2007) recognizing that his reassignment to Axxis' land/office operations was a permanent reassignment. Thus, Plaintiff was not a Jones Act seaman at the time of his alleged injury on October 20, 2007 aboard the GEORGIA and his recovery, if any, for such injury is limited to compensation under the Louisiana Workmen's Compensation Act.
>
> . . . .
>
> . . . Plaintiff in this case was permanently reassigned to Axxis' land/office operations on July 26, 2006 ([1 year and] 3 months prior to his injury). Plaintiff signed an acknowledgement on August 7, 2006, recognizing that his reassignment to Axxis' land/office operations was a permanent reassignment. Once Plaintiff was reassigned, Plaintiff's past history of working aboard drilling barges at Axxis becomes irrelevant to a determination of plaintiff's seaman status. Because Plaintiff was permanently reassigned to Axxis' land/office operations and his alleged injuries occurred on the land rig GEORGIA, Plaintiff was not a Jones Act seaman at the time of his accident on October 20, 2007. Thus, Plaintiff's recovery for his alleged injuries on October 20, 2007, if any, is limited to compensation under the Louisiana Worker's Compensation Act.

[Doc. 22-1, pp.3-4, 7 (footnotes omitted)]

Contrarily, plaintiff asserts "there are genuine issues of material fact with regard to whether he lost his seaman status due to a reassignment." [Doc. 24, p.2] In support of his position, plaintiff argues:

> Sepulvado remained at "light duty," for ten consecutive months until April of 2007, when Axxis requested, and made arrangements for, Sepulvado to undergo a Functional Capacity Evaluation. The essential reason for his functional capacity evaluation was to answer the simple question; namely, could Sepulvado go back to work as a crane operator. The Functional Capacity Report, which is dated April 13, 2007, reflects that the examiner was asked to comment on whether or not Sepulvado

12

possessed the ability to perform the physical requirements of a crane operator. . . . The functional capacity examiner concluded that Sepulvado was "able to return to work full duty without restrictions as a Crane Operator for Axxis Drilling Company."
. . .

Although Sepulvado had been cleared by the functional capacity examiner and Dr. Gidman to return to his former job as a crane operator, Axxis, contrary to its earlier representations, assigned him to work as a galley hand on a land-based rig, with the understanding that his assignment as a galley hand on a land based rig was only temporary until a crane operator position became available. Sepulvado was paid the same salary that he received when he worked as a crane operator. . . .

. . . .

Axxis claims the legal right to strip Sepulvado of his seaman status by simply making a clerical entry in his personnel file at a time when he had not reached maximum medical improvement from his initial injury. . . .

. . . .

. . . Axxis required Sepulvado to return to work in a restricted capacity after his doctor had certified that he had not reached MMI from an injury that he sustained while working as a Jones Act seaman aboard his employer's vessel.

. . . .

Axxis' concedes that "[w]hen determining seaman status, the court normally looks to the entire period of plaintiff's employment, except in cases where plaintiff has been permanently reassigned." As its arguments imply, looking at Sepulvado's overall employment would result in a finding that he was a seaman. In order to establish that it is entitled to the partial summary judgment that it seeks, Axxis was required to establish, as a matter of law, that Sepulvado had been permanently reassigned after his first accident. However, the affidavit of its president, Robert Dunn, is directly contradicted by Sepulvado's deposition testimony that the work reassignment, to a land rig, was only temporary. This assertion is corroborated by the incontrovertible facts that: (1) Axxis requested and secured a Functional Capacity Evaluation for the purpose of determining whether or not Sepulvado was physically capable to return to work as a crane operator, (2) Dr. Gidman was asked to review the Functional Capacity Evaluation and to state whether or not he was of the opinion that Sepulvado could return to work as a crane operator -- Dr. Gidman indicated that Sepulvado was, and (3) Sepulvado continued to receive a crane operator's pay even though he was doing the work of a galley hand. This conflict in the evidence cannot properly be resolved in summary judgment proceedings. The Motion for Partial Summary Judgment should, therefore, be denied.

[Doc. 24, pp. 4-5, 9 (footnotes omitted)]

Essentially, defendant argues its notice to plaintiff stating he had been permanently reassigned to land duties, coupled with the fact plaintiff worked solely on land for fifteen months prior to his second injury, terminated plaintiff's status as a seaman. [Doc. 25-1, p.1]. In effect, defendant is arguing that this is one of the "rare cases" where only one conclusion can be drawn from the facts. *See e.g.* Bouvier at 90. In support of this argument, defendant cites the following language from Guidry:

> [T]he fact that he was once a seaman and that either he or his employer intend some day for him again to become one do not suffice to tint with blue water status all the events that happen in between, however remote in time and place from a vessel past or a vessel future.
>
> . . . .
>
> . . . . Higginbotham does not imply that a maritime worker assigned to work ashore for a very long period of time would continue indefinitely to be a seaman merely because it is contemplated that he will some day return to the vessel . . . .

Guidry, 614 F.2d at 453 (citing Higginbotham v. Mobil Oil Corp., 545 F.2d 422 (5th Cir. 1977). However, the Court notes the language cited from Guidry was stated in the context of the appellate court's review of the trial court's issuance of a directed verdict in favor of defendant, after hearing the evidence at trial. Id. ("Because seaman status ordinarily is a jury question, a court may rarely conclude as a matter of law that an individual is or is not a seaman within the meaning of the Jones Act. Barrios v. Louisiana Construction Materials Co., 465 F.2d 1157, 1162 (5th Cir. 1972). However, a court may hold that there is no reasonable evidentiary basis to support a jury finding that an injured person is a seaman and member of a crew of a vessel under the Jones Act. Beard v. Shell Oil Co., 606 F.2d 515 (5th Cir. 1979). We conclude that there was no basis on which a jury could have found Guidry to be a seaman in Messina's employment, and that the trial judge was correct in

directing a verdict in favor of Messina on this issue.")

Defendant additionally cites Smith v. Nicklos Drilling Co., 841 F.2d 598 (5th Cir. 1998), Garner v. Pool Company of Texas, 595 So.2d 751 (La. App. 4 Cir. 1992), and McInnis v. Parker Drilling Company, 2004-1887, (La. App. 4 Cir. 6/1/05), 905 So.2d 1153, in support of its position that this Court should grant summary judgment and find plaintiff was not a seaman at the time of the second accident. The foregoing cases are distinguishable from the matter before this Court. In Garner (a non-binding, state court appellate opinion), plaintiff's seaman status was not determined on summary judgment; rather, plaintiff's status was determined following a bench trial on his claim for maintenance and cure, which had been severed from his claims asserted under the Jones Act and general maritime law. Similarly, in McInnis (also a non-binding, state court appellate opinion), plaintiff's seaman status was decided at trial on the merits. However, in Smith (which is binding precedent), the court did determine plaintiff was not a seaman by way of summary judgment, finding plaintiff's transfer to a land-based assignment was permanent. Yet, as plaintiff correctly points out, the Smith Court's finding that only one conclusion could be drawn from the evidence was compelled by the fact that plaintiff was transferred to a land rig because the barge to which he had been assigned had been taken out of service. Smith, 841 F.2d at 599 ("[B]oth his work location and status were permanently changed when the floating rig on which he had worked was decommissioned. Smith argues that the permanency of this change should have been a fact for the jury to decide. The permanency, however, was undisputably established when the old barge rig was finally removed from service; he was never to return to the status of crewmember on that vessel.").[9] In the present

---

[9]Similarly, in Garner, the barge to which plaintiff had been assigned prior to his accident was sold after his transfer to a fixed platform.

15

case, there is no indication that the D/B JUSTICE (or Axxis' fleet of vessels) has been sold or decommissioned.

As mentioned, defendant relies heavily on the notice, signed by plaintiff, stating plaintiff had been permanently transferred to land duties. [Doc. 22-1, p.4]. However, whether plaintiff was transferred permanently, such that he lost seaman status, is disputed by plaintiff. Plaintiff supports his argument with his deposition, in which he testifies: 1) it was his understanding his assignment to land-based work was only temporary, effective until a crane operator position became available "on the barge"; and 2) during the period he worked on land he was paid the same amount he had been paid as a crane-operator. [Doc. 24-2, pp. 3-4, 6-7]. Given the length of time plaintiff was reassigned to shore, and the seemingly clear language of the notice of reassignment, it would certainly be reasonable for a jury[10] to find plaintiff lost his seaman status. However, given the fact defendant paid plaintiff the wages of a crane operator during the period at issue, defendant arranged for plaintiff to undergo a Functional Capacity Evaluation wherein the examiner was asked to determine whether plaintiff could "NOW RETURN TO FORMER JOB"[11] [Doc. 24-2, p. 20], the

---

[10] At the request of both parties, this matter is scheduled to be tried by jury.

[11] The final question addressed in the FCE states, "CAN PERSON NOW RETURN TO FORMER JOB?" [Doc. 24-2, p. 20] The response provided in the report states, in pertinent part:

> Yes. Client's former job as a Crane Operator with Axxis Drilling Company is considered a medium level job. The client has demonstrated the ability to work at this level.
>
> . . . .
>
> Therefore, it is our opinion that Mr. Sepulvado is able to return to work full duty without restrictions as a Crane Operator for Axxis Drilling Company.
>
> I have reviewed the above information with Mr. Sepulvado and he agrees this is a fair assessment of his abilities at this time.

[Doc. 24-2, pp. 20-21] The report does not discuss any other jobs Mr. Sepulvado could or could not perform.

16

examiner answered the question affirmatively, the report is silent as to plaintiff's abilities to perform any job other than that of a crane operator, as well as plaintiff's testimony that his assignment to a land rig was only temporary until a position "on the barge" became available, this Court cannot find "the facts and the law will reasonably support only one conclusion." Harbor Tug and Barge Co. v. Papai, 520 U.S. 548, 554 (1997)("The seaman inquiry is a mixed question of law and fact, and it often will be inappropriate to take the question from the jury. Nevertheless, 'summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion.'")(quoting McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 356 (1991)).[12] Were this Court to determine which interpretation of the facts is correct, by way of this motion for summary judgement, it would usurp the role of the jury in this matter as the finder of fact. Since more than one conclusion could reasonably be drawn concerning plaintiff's seaman status from these facts, partial summary judgement is not appropriate. Chandris, 515 U.S. at 373 ("Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion") (Citation omitted). Accordingly, the motion for partial summary judgment [Doc. 22] is DENIED.

---

[12] As stated in Offshore Co. v. Robison, 266 F.2d 769, 779-80:

> Attempts to fix unvarying meanings have a firm legal significance to such terms as 'seaman', 'vessel', 'member of a crew' must come to grief on the facts. These terms have such a wide range of meaning, under the Jones Act as interpreted in the courts, that, except in rare cases, only a jury or trier of facts can determine their application in the circumstances of a particular case. Even where the facts are largely undisputed, the question at issue is not solely a question of law when, because of conflicting inferences that may lead to different conclusions among reasonable men, a trial judge cannot state an unvarying rule of law that fits the facts. The Jones Act cases involving coverage are similar in this respect to many negligence and contributory negligence cases.

(Footnotes omitted); see also Leonard v. Exxon Corp., 581 F.2d 522, 524 (5th Cir. 1978)("Because of the policy of providing an expansive remedy for seamen, submission of Jones Act claims to a jury requires a very low evidentiary threshold; even marginal claims are properly left for jury determination.").

summary judgement is not appropriate. <u>Chandris</u>, 515 U.S. at 373 ("Removing the issue from the jury's consideration is only appropriate where the facts and the law will reasonably support only one conclusion") (Citation omitted). Accordingly, the motion for partial summary judgment [Doc. 22] is DENIED.

## V.  Conclusion

Due to the foregoing, the Court finds a genuine issue of material fact exists as to whether or not plaintiff was permanently reassigned to land duties, and thus lost his status as a Jones Act seaman. Accordingly, the motion for partial summary judgment [Doc. 22] is DENIED.

Lafayette, Louisiana, this 2nd day of August, 2010.

```
         REBECCA F. DOHERTY
         UNITED STATES DISTRICT JUDGE
```